(Decided April 1st, 1897).

————  ———

ISAAC S. SANNER et al. *vs.* STATE OF MARY-LAND, Use of WM. GISRIEL.

*Informers—Criminal Law—Fines for Violation of the Lottery Law.*

Where a statute provides that one-half of fines imposed for violation of the law shall go to the informer, that person is the informer within the statute who first gives notice to the police authorities that a violation of the law takes place in a certain house, and in consequence of this information arrests are made, followed by conviction *and payment of the fine.* It is not necessary that he should be a witness in the case, or have such personal knowledge of the crime as would make him a competent witness.

Code, Art. 27, sec. 176, enacts that if any person keep a place for the sale of lottery tickets, etc., he shall be subject to a fine, "one-half of which shall go to the informer." Plaintiff informed the Marshal of Police that he had reason to believe that the policy business was being carried on in a certain room at certain hours. In consequence of this information certain parties were arrested for a violation of the statute and convicted upon the evidence of other persons arrested at the same time. The police had no previous knowledge that the policy business was carried on at this place. In an action on the sheriff's bond to recover one-half of the fines which had been paid to him, *Held,* that the plaintiff was the informer within the statute and entitled to recover.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.) At the trial the following prayer offered by the plaintiff was granted :

" If the jury shall find from the evidence that the equitable plaintiff informed the Marshal of Police of Baltimore City, in February, 1893, of certain circumstances connected with the occupancy of the second and third floors of the

building No. 316 N. Holiday street, in the city of Baltimore, and that he, the equitable plaintiff, had reason to believe that a policy business was being carried on upon said premises ; and shall further find that said Marshal of Police acted upon said information and caused a raid to be made upon said premises on account of said information ; and that said raid was made by the members of the police force of Baltimore City, and at the time of said raid Nathaniel Diggs and Elijah Johnson, together with others, were arrested by said policemen and charged with carrying on a policy business on said premises ; and that because of the circumstances under which they were arrested and other evidence procured in their cases, the indictments offered in evidence were found by the grand jury of Baltimore City, and that they each pleaded guilty to the second count of said indictment, and were each fined in the sum of $1,000 ; and that both said Diggs and Johnson paid said fines to the defendant, Isaac S. Sanner, the sheriff of Baltimore City, and that said equitable plaintiff or his attorney subsequently demanded one-half of said fine as the informer in said cases, and that said defendant Sanner failed to pay the same, that then the plaintiff is entitled to recover one-half of the amount of said fines."

The defendants asked the Court to instruct the jury " that in order to entitle the plaintiff to recover in this action, it is essential that the jury shall find that the plaintiff not only gave information to the police authorities of his suspicion of a violation of law, at the premises referred to in the evidence, but such information as led to the conviction of the accused parties, Diggs and Johnson, referred to in the evidence."

But the Court rejected this prayer, and in lieu thereof instructed the jury " that in order to entitle the plaintiff to recover in this action, it is essential that the jury shall find that the plaintiff not only gave information to the police authorities of his suspicion of a violation of law, at the premises referred to in the evidence, but such information as led to the conviction of the accused parties, Diggs and John-.

son, referred to in the evidence ; but if they find the facts to be as stated in plaintiff's prayer, then said information was such as led to said conviction."

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page and Boyd, JJ.

*Wm. Pinkney Whyte*, for the appellants.

*Harry M. Clabaugh, Attorney-General,* and *Edward T. Jones* (with whom was *George R. Gaither, Jr.,* on the brief), for the appellee.

Bryan, J., delivered the opinion of the Court.

Elijah Johnson and Nathaniel Diggs were each indicted in the Criminal Court of Baltimore on the charge of keeping a room for the purpose of selling lottery tickets, and having pleaded guilty were each fined a thousand dollars. Gisriel alleged that he was the informer in the two cases, and that he was therefore entitled to one-half of the amount of the fines, by virtue of Article 27, section 176 of the Code. He therefore brought an action on the official bond of Sanner, the sheriff, to the use of himself as equitable plaintiff. Having recovered judgment, the sheriff and his sureties appealed.

The evidence showed that Gisriel called on the Marshal of Police and told him that he had rented out the upper story of the house in which he conducted his business, and that for several days he had noticed at noon and in the afternoon a large number of white and colored persons going to the place, and that he thought that the policy business was carried on there. The evidence also showed that he gave to the Marshal a description of the building, telling him of the exits and entrances ; and that in consequence of this information the Marshal ordered the place to be raided by the police, and that they found a number of persons in one of the upper rooms and some of the equipments and appliances used in carrying on the policy business ; that all

persons found there were arrested; that they found John-son and Diggs locked up in a room and they were also arrested; that evidence of the guilt of these men was obtained from persons arrested at the time, and that they were subsequently indicted and pleaded guilty and were fined a thousand dollars each, which fines were paid to the sheriff, and that a demand was made on the sheriff in behalf of Gisriel by his attorney for the payment of a moiety of these fines, and that he refused to pay it. The evidence also showed that the Marshal received his first information about the character of the raided place from Gisriel, and that before that information he had never suspected it to be a policy shop, or heard of its being suspected as such.

We must decide, on the supposition that this evidence is true, whether Gisriel is entitled to one-half of the fines which the statute gives to the informer. It enacts that if any person shall keep a house, office or other place for the purpose of selling lottery tickets * * he shall be subject to a penalty of a thousand dollars, to be recovered by indictment or by action of debt in the name of the State, one-half of which shall go to the informer. It is impossible to mistake the meaning and intention so plainly expressed. Experience has shown that there were difficulties in the way of detecting and punishing this offence. The Legislature desired to increase the facilities for discovering when it had been committed by offering rewards to those who were aware that the law had been violated; provided they would give information to the proper legal authorities. The informers were not required to take part in arresting offenders; neither was it necessary that they should be witnesses at their trial. It does not increase the reputation of public trials for purity and justice, when the witnesses are to receive rewards in case of the conviction of the accused. Of course, under this statute the reward could not be payable except in case of conviction. But when conviction has taken place, and judgment has been rendered, and the fine paid, the only question in respect to the reward is the

ascertainment of the informer.   Now Gisriel made known
to the Marshal of Police facts which convinced him that the
place in question was " a headquarters of policy," as he
expressed it in his testimony.   Gisriel described the house
minutely and particularly, so that every precaution might be
taken to prevent the escape of the occupants, and he sent
a police force which entered the rooms and arrested a num-
ber of persons who were apparently engaged in and about
the policy business, as it is termed in the evidence.   Two
of the persons arrested agreed to become witnesses and they
accused Johnson and Diggs, who on being indicted pleaded
guilty.   Manifestly the arrested persons who became wit-
nesses were not the informers.   Without the knowledge
communicated by Gisriel the arrest could not have been
made.   The communication was made to the Marshal for
that purpose.   After the arrest everything else followed as
might have been expected ; the arrested persons were anx-
ious to save themselves and readily gave their evidence
against the men who had charge of the business.   The
consequence following directly by regular consecutive steps
from Gisriel's information was the prosecution and convic-
tion of the accused.   If a man should say to the sheriff, a
murder has been committed in a certain house, describing it
accurately, and the murderer and the body of his victim are
both in a room in the upper part of the house, would he
not have all the attributes of an informer, although he
might not know the name either of the accused or the de-
ceased ?   Would the fact that he might not have such per-
sonal knowledge of the matter as was necessary to make
him a competent witness have any weight in determining
the value of the information which he had given ?   What
the executive authorities of the law require in the matter of
arrests is knowledge that a crime has been committed, and
knowledge of the place where the offender may be found.
When a person furnishes this knowledge in advance of all
others, he becomes entitled to the reward promised to an in-
former, provided a prosecution and the conviction of the ac-

cused ensue, founded on his information.   Under a statute like the one now before us, where the informer is to be paid a portion of the fine, it is of course necessary that the fine should be paid by the convicted party.   Gisriel's communication to the Marshal was as full, as distinct and as accurate as could have been required by an intelligent officer, and it resulted by a natural and ordinary succession of events in the conviction of those who were violating the law.

The instructions given by the trial Court are in accordance with the views which we have expressed.

*Judgment affirmed.*

(Decided April 1st, 1897).